UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

MAR 19 2020

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA,

v.                                          CRIMINAL NO. 4:19cr85

JAHREESE WOODLEY,

      Defendant.

## OPINION

This matter comes before the court on the Defendant's Motion to Suppress ("Motion"), filed on January 5, 2020. ECF No. 16. The United States filed a Response on January 21, 2020. ECF No. 18. The Defendant filed a Reply on January 27, 2020. ECF No. 23.

The court held a hearing on the Motion on February 4, 2020. The court heard testimony from Officer Brian Torrez and Sergeant Kevin Nichol of the Newport News Police Department. The court reviewed several exhibits, including video footage with sound from Officer Torrez's Axon body camera. The court ruled from the bench and denied the Motion in part, and reserved ruling on the remainder of the Motion. For the reasons below and stated from the bench, the court **DENIES** the Motion in part and **GRANTS** the Motion in part.

### I. Factual Background

Based upon consideration of the evidence and testimony that the United States presented at the hearing, the court makes the following findings of fact. On January 12, 2019, at approximately 5:51 P.M., Officer Torrez and Sergeant Nichol observed the

Defendant, who was driving on Marcus Drive towards Old Oyster Point Road, fail to come to a complete stop at a stop sign at the intersection of Marcus Drive and Old Oyster Point Road. See Gov. Ex. 4 (map of relevant area). After the Defendant turned onto Old Oyster Point Road, the officers pulled behind the Defendant and signaled for the Defendant to pull to the side of the road. The Defendant did so. Officer Torrez approached the vehicle from the passenger side and Sergeant Nichol approached from the driver's side. As they approached the vehicle, both officers detected the odor of marijuana emanating from the vehicle. Officer Torrez also observed a partially open white plastic bag containing clear bags of marijuana on the front passenger floor board. See Gov. Ex. 7. Sergeant Nichol then requested that the Defendant step outside the car, and the Defendant complied.

Officer Torrez advised the Defendant of his Miranda rights. In response to the officer's questions, the Defendant stated that he had a "little bit" of "weed," about "a half ounce" in the car. Officer Torrez asked the Defendant where he lived. In response, the Defendant gestured towards Marcus Drive. Later, when Sergeant Nichol asked the Defendant for his address for paperwork, the Defendant told him to use the address on the Defendant's driver's license, which is 913 Fluvanna Road in Newport News, Virginia.

Officer Torrez and Sergeant Nichol searched the car. Inside the car, they found five (5) bags of marijuana, weighing a total

of two hundred fifty-six (256) grams, which is the equivalent of nine (9) ounces. See Gov. Exs. 6, 7. They found $157.00 in cash, and a second cell phone. When Officer Torrez found the second cell phone, he observed a message on the screen that read, in substance, "approximately eight minutes away from meeting up." Hr'g Tr. 16:8-19, ECF No. 29 (Transcript of Hearing on Feb. 4, 2020).

The Newport News Police Department conducted additional searches to verify the Defendant's address. A search of DMV records yielded an address on Beacon Court. A search of the database Accurint associated the Defendant with the address 948 Marcus Drive, Apt. 10. The 948 Marcus Drive address is located approximately three hundred fifteen (315) feet in a straight line from the stop sign at Marcus Drive and Old Oyster Point Road that the Defendant ran, but a longer distance by road. Gov. Ex. 4 (map of area); see Hr'g Tr. 74:8-14. Law enforcement conducted "knock and talks" at the Beacon Court and Fluvanna Drive addresses, and concluded that the Defendant did not reside at those addresses.

Following the Defendant's arraignment in state court, Officer Torrez applied for a search warrant for 948 Marcus Drive, Apt. 10. Gov. Ex. 5 at 5 (search warrant and affidavit). The first section of the three-page affidavit in support of the warrant, "Introduction and Applicant Background," set out Officer Torrez's qualifications and experience in drug investigations. Next, the "Probable Cause" section recounted the traffic stop and seizure of

the two hundred fifty-six (256) grams of marijuana. The warrant notes that 948 Marcus Drive "is the same area officers observed Mr. Woodley's vehicle come from." Gov. Ex. 5 at 8. The warrant also stated that, "[w]hile at the Booking and speaking to the Magistrate's [*sic*] on January 12, 2019, Mr. Woodley advised he is in between 948 Marcus Drive Apt 10 and his girlfriend's residence. I asked Mr. Woodley if he still lives at 948 Marcus Drive Apt 10 and he advised he still does." Id. The warrant concluded that "there is probable cause to believe the alleged offender could be involved in the distribution of narcotics." Id.

On January 13, 2019, Newport News Police Department officers, including Officer Torrez and Sergeant Nichol, executed the search warrant at 948 Marcus Drive, Apt. 10. Officers recovered, among other things, THC hash oil, hash oil containers, a handgun, ammunition, approximately 8.96 pounds of marijuana inside vacuum-sealed plastic bags, and $45,000 in cash. See Gov. Ex. 5 at 2-4.

## II. Analysis

The Defendant challenges the stop and search of his car, as well as the search of his residence. The court addresses each argument in turn.

### A. Stop and search of the Defendant's car

The warrantless stop and search of the Defendant's car did not violate the Fourth Amendment. "As a general matter, the

4

decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Here, Officer Torrez and Sergeant Nichol observed the Defendant fail to come to a complete stop at a stop sign. Failure to fully stop at a stop sign is a violation of Virginia law. See Va. Code Ann. § 46.2-821. Thus, it was lawful for the officers to stop the Defendant's car.

After stopping the Defendant, the officers then lawfully searched the car. As they approached the car, both officers detected the odor of marijuana coming from the car.[1] The odor of marijuana emanating from a vehicle provided probable cause to believe that marijuana was present in the vehicle. See United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010) ("When Lewis rolled down his window to comply, Mills smelled the odor of marijuana emanating from the vehicle. At that point, the officers possessed probable cause to search the vehicle . . . ."); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("[T]he odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."). Under the automobile exception to the warrant requirement, the officers were then lawfully permitted to search the car. See United States v. Scheetz, 293 F.3d 175, 184 (4th Cir. 2002) ("Once the car was properly

---

[1] See supra Part I.

5

stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car.").

In addition, Officer Torrez saw a partially open bag, in plain view on the floor board, containing marijuana. This also provided the officers with probable cause to believe marijuana was in the vehicle. See, e.g., United States v. Hall, 397 F. App'x 860, 862 (4th Cir. 2010) (unpublished) ("[T]he discovery of the marijuana in plain view gave police probable cause to conduct the search of the vehicle that ultimately led to the firearm's discovery."). Accordingly, the search of the Defendant's car did not violate the Fourth Amendment. See Hr'g Tr. 76:6-77:10.

## B. Search of the Defendant's apartment

### i. Probable cause for the warrant

The Defendant argues that the search of his residence at 948 Marcus Drive, Apt. 10 was an unreasonable search in violation of the Fourth Amendment. The court agrees with the Defendant that there was insufficient probable cause to support the warrant that law enforcement obtained to search the residence.

A court reviewing a magistrate judge's decision to issue a warrant is tasked with ensuring that the magistrate judge had a "substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (alterations, quotations, and citation omitted). Courts use a totality-of-the-circumstances test to determine whether probable cause supported

a search warrant. Id. at 238. While "appellate courts should pay great deference to magistrates' findings of probable cause . . . this does not mean that warrants based on conclusory allegations should be upheld[.]" United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996) (internal quotations and citation omitted).

In evaluating an affidavit in support of a warrant to search a specific place, the question "is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n.6, (1978)). Courts have upheld search warrants for residences only where "some information links the criminal activity to the defendant's residence." Id. at 1583. However, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988).

As discussed above,[2] the following facts in the affidavit purportedly provide a link to the Defendant's residence at Marcus Drive. The Defendant failed to stop at a stop sign at Marcus Drive and Old Oyster Point Road. Officers recovered two hundred fifty-

---

[2] See supra Part I.

six (256) grams of marijuana from the car. According to a police database, "Mr. Woodley is residing at 948 Marcus Drive Apt 10, Newport News, VA 23602, which is the same area officers observed Mr. Woodley's vehicle come from." The Defendant "advised he is in between 948 Marcus Drive Apt 10" and another residence. When asked if he still resided at 948 Marcus Drive, "he advised he still does." Finally, the affidavit discussed Officer Torrez's qualifications and experience with "multiple arrests included [*sic*] narcotics and weapons offenses."

These facts do not establish a sufficient nexus between the Defendant's Marcus Drive residence and the distribution of marijuana. They establish that the Defendant was stopped in "the same area" as his residence with a quantity of marijuana that was likely for distribution. But they do not establish two additional critical facts needed to link drugs to the residence. First, they do not establish that the Defendant possessed any <u>more</u> drugs than he had in his vehicle. Second, they do not establish that, even if there was evidence that the Defendant possessed more drugs, those drugs would be located at Marcus Drive. Importantly, the officers initially saw the Defendant on Marcus Drive, but did not see him leaving from his residence on Marcus Drive.

Analogous cases support the proposition that a defendant's possession of drugs does not establish probable cause to believe that there are drugs at his residence. In <u>United States v. Lalor</u>,

for example, the court held a warrant invalid that was based on information from two confidential informants, who told police that the defendant was selling drugs on certain streets near his residence. 996 F.2d 1578, 1579-80, 1582 (4th Cir. 1993). The affidavit, however, did not "describe circumstances that indicate such evidence was likely to be stored at Lalor's residence." Id. at 1582. Because there was no "information link[ing] the criminal activity to the defendant's residence," the court held the warrant was defective. Id. at 1583. Similarly, in United States v. McPhearson, law enforcement arrested the defendant on his front porch, then searched him and found 6.4 grams of crack cocaine in his pocket. 469 F.3d 518, 522 (6th Cir. 2006). The court, however, rejected the government's contention that "an individual arrested outside his residence with drugs in his pocket is likely to have stored drugs and related paraphernalia in the same residence." Id. at 524. Like in Lalor, the court held that the warrant was defective because the affidavit did not "support the inference that evidence of wrongdoing would be found in McPhearson's home because drugs were found on his person." Id. at 525. Finally, in United States v. Lewis, No. 4:19cr52 (E.D. Va. Oct. 24, 2019) (Allen, J.), the court held a warrant to search a residence invalid where it was based on a search of the defendant in a car that yielded "less than half of one ounce of marijuana in three separate baggies, plus an additional seven hundred dollars." Id. at 11.

Like in <u>Lalor</u> and <u>McPhearson</u>, the court held the warrant to search the defendant's home was not supported by probable cause because it did not establish the necessary nexus to the Defendant's residence. <u>Lewis</u>, slip. op. at 11-12; <u>see, e.g.</u>, <u>United States v. Brown</u>, 828 F.3d 375, 382 (6th Cir. 2016) (holding warrant defective because the supporting affidavit "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there").

The United States attempts to distinguish these cases on the grounds that the Defendant in this case was stopped with a distribution quantity of marijuana. <u>See</u> Gov. Resp. at 15-16. Officer Torrez and Sergeant Nichol testified that the amount of marijuana recovered, two hundred fifty-six (256) grams, along with the marijuana being packaged into five (5) separate bags, suggested that the Defendant was distributing the marijuana. Hr'g Tr. 26:21-27:1, 43:18-22. Even so, there is nothing further to suggest that the Defendant had more marijuana in his residence for distribution or that he was distributing it from his residence. From the facts here, the court finds it likely to infer that the Defendant intended to distribute the marijuana he had in his car at the time of the stop, given its packaging and the message on his phone.[3] Moreover, even though the marijuana in his car was

---

[3] <u>See</u> <u>supra</u> Part I. Notably, the two hundred fifty-six (256) grams of marijuana in the Defendant's car were packaged into

likely for distribution, the Government's argument is unpersuasive because evidence of one-time distribution does not necessarily suggest that the Defendant possessed more marijuana. See United States v. McCoy, 905 F.3d 409, 417 (6th Cir. 2018) (noting that the Government cannot demonstrate nexus to home "by showing evidence of a single instance of the defendant's having dealt drugs away from his home."). Indeed, the Fourth Circuit has stated that "in the investigation of a drug distribution offense, it is often unreasonable to suspect that drugs will be at the defendant's residence because when drugs are used in the commission of a distribution offense, the distributed drugs are no longer in the possession of the suspected distributor." United States v. Wienke, 733 F. App'x 65, 70 (4th Cir. 2018) (unpublished) (internal quotations and citation omitted).

Furthermore, even if one-time distribution suggested that the Defendant possessed additional drugs, it does not also suggest that those drugs would be at the Defendant's house. The search warrant's vague conclusion that the Defendant was stopped in the "same area" as his residence does not provide a sufficient connection to the residence. And there was absolutely no other evidence connecting the Marcus Drive residence to drug activity.

---

five (5) separate clear bags, suggesting that the Defendant was distributing the drugs to five (5) purchasers/users, nothing more. See Gov. Exs. 5, 6, 7.

Like in <u>Lewis</u>, in this case "[the] affidavit did not rely on a confidential informant who knew or believed that drug activity was occurring at [the Defendant's] residence." <u>Lewis</u>, slip. op. at 8-9. Additionally, the Defendant indicated he was in the process of moving between the residences at Marcus Drive and Fluvanna Drive. <u>See</u> Gov. Ex. 5 at 8.

The one case that the Government affirmatively relies on, <u>United States v. Grossman</u>, 400 F.3d 212 (4th Cir. 2005), is inapposite. <u>See</u> Gov. Resp. at 12-13. In <u>Grossman</u>, the affidavit supporting the warrant was based on "information from a reliable informant who identified Grossman as a drug dealer, in addition to [law enforcement's] own observations of Grossman's suspicious and evasive behavior just outside the home's front door." <u>Id.</u> at 217. The Fourth Circuit held that "[u]nder these circumstances, it is reasonable to suspect that a <u>drug dealer</u> stores drugs in a home to which he owns a key." <u>Id.</u> at 218 (emphasis added). The critical difference between <u>Grossman</u> and this case is that in <u>Grossman</u> there was much more evidence demonstrating the defendant was a "drug dealer" engaged in ongoing drug distribution. The informant in <u>Grossman</u> told law enforcement that the defendant was "selling cocaine and keeping large quantities of it in 'stash houses.'" <u>Id.</u> at 214. In contrast, here law enforcement did not have any information suggesting that the Defendant was engaged in ongoing drug trafficking. <u>See</u> <u>Lewis</u>, slip. op. at 10 (holding that

12

"evidence of the possible, minimal distribution recovered at arrest" was insufficient to establish probable cause). Further, the officers admitted they had no prior contact or information regarding the Defendant and drug dealing. Hr'g Tr. 28:17-30:3. Simply put, there was no corroboration or other evidence to associate drug distribution or illegal activity with the Defendant's residence on Marcus Drive.

Other Fourth Circuit cases finding a sufficient nexus to the defendant's residence are distinguishable on similar grounds. See, e.g., United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (finding nexus where "[t]he affidavit submitted to the magistrate clearly establishes that Williams was a drug dealer."); see also Lewis, slip. op. at 9 (distinguishing cases on grounds that "[t]he officers in each case had more reason to label those defendants as 'drug dealers.'").

The United States attempts to rely on two additional pieces of evidence to support probable cause, but neither was contained in the affidavit. First, the United States argues that "the defendant was stopped coming *from* his residence," thus providing the requisite link to his home. Gov. Resp. at 14 (emphasis in original). The affidavit, however, does not make this assertion. It merely states that 948 Marcus Drive "is the same area officers observed Mr. Woodley's vehicle come from." Further, the testimony was to the contrary. The officers testified at the hearing that

they first saw the Defendant on Marcus Drive, not leaving from the Marcus Drive residence. Hr'g Tr. 15:25-16:2.[4]

Second, the United States argues that the Defendant attempted to "distance himself" from the Marcus Drive residence and "throw the officers off the scent." Gov. Resp. at 14. Similarly, however, this information is not contained in the affidavit or reasonably inferable from the affidavit. The affidavit states the following regarding the Defendant's residence:

> According to a Police Data-base, it reveals that Mr. Woodley is residing at 948 Marcus Drive Apt 10 . . . While at the Booking and speaking to the Magistrate's [*sic*] on January 12, 2019, Mr. Woodley advised he is in between 948 Marcus Drive Apt 10 and his girlfriend's residence. I asked Mr. Woodley if he still lives at 948 Marcus Drive Apt 10 and he advised he still does.

This information suggests the Defendant was in between apartments, not that he was being evasive about where he was residing. While "[t]he magistrate may draw a reasonable inference from the facts stated," Wienke, 733 F. App'x at 70, these facts do not support the inference that the Defendant was misleading law enforcement regarding his address, or the additional inference that drugs would be located at 948 Marcus Drive.

In sum, the affidavit states that law enforcement arrested the Defendant in a vehicle near his residence with a quantity of marijuana that was likely for distribution. There was no evidence

---

[4] See supra Part I; Gov. Ex. 4 (map of relevant area).

14

in the affidavit that the Defendant was a drug dealer, had dealt drugs from his home, or was even coming from his residence. No confidential informant told the police that the Defendant was engaged in drug distribution or that the residence was connected to drug distribution. In these circumstances, there was insufficient probable cause to support the warrant.

### b. Good-faith exception

The United States argues that, even if the warrant was not supported by probable cause, the evidence is admissible under the "good faith" exception to the exclusionary rule, established in United States v. Leon, 468 U.S. 897 (1984). Gov. Resp. at 17-19. The court disagrees.

When applicable, the exclusionary rule "forbids the use of improperly obtained evidence at trial." Herring v. United States, 555 U.S. 135, 139 (2009). In United States v. Leon, the Supreme Court carved out a "good-faith" exception to the exclusionary rule. 468 U.S. 897, 925 (1984). Under the good-faith exception, "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting Leon, 468 U.S. at 922). Importantly, when deciding whether the good-faith exception applies, courts may consider "uncontroverted facts known to [law enforcement] but inadvertently not presented to the

magistrate" in the affidavit. United States v. McKenzie-Gude, 671 F.3d 452, 460 (4th Cir. 2011).

Leon, in turn, identifies four circumstances in which reliance on a warrant would not qualify as "objectively reasonable." 468 U.S. at 923. Here, the Defendant argues that the good-faith exception does not apply because law enforcement "rel[ied] on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (internal quotations and citation omitted); see Def.'s Reply at 4-6.

The court agrees that the good-faith exception does not apply for this reason. Even under the good-faith exception, "the affidavit still must draw some plausible connection to the residence." United States v. Brown, 828 F.3d 375, 385-86 (6th Cir. 2016). Here, that evidence is simply missing. For example, there was no reliable informant who told law enforcement that the Defendant was selling drugs on a street near his residence, Lalor, 996 F.2d at 1580-81; no "extensive evidence of . . . drug trafficking activities," United States v. Williams, 548 F.3d 311, 320 (4th Cir. 2008); no "police investigation of roughly two months coupled with receipt of information from various sources," United States v. Mayle, 382 F. App'x 329, 333 (4th Cir. 2010) (unpublished); or any recorded telephone conversations made from

16

the residence regarding narcotics transactions, United States v. Johnson, 4 F. App'x 169, 173 (4th Cir. 2001) (unpublished).

Rather, the facts are analogous to Lewis, in which the court held that the good-faith exception did not apply where the affidavit "established only that a man was found with evidence of misdemeanor-quantity marijuana distribution—low enough to reasonably constitute a one-off sale—and that he is not homeless." Slip. op. at 13. While the Defendant here possessed a larger quantity of drugs, the amount of drugs alone does not establish sufficient "indicia of probable cause" to meet the good-faith exception. Id. at 14 (quoting Leon, 468 U.S. at 923). See, e.g., Brown, 828 F.3d at 385-86 (holding good-faith exception did not apply where affidavit failed to draw connection to residence). An assumption that the Defendant possessed drugs in his residence does not support probable cause. It is equally plausible to assume that the Defendant obtained the drugs to sell and distribute from another person, i.e., another drug dealer, a stash house, or from any number of sources other than his residence.[5]

---

[5] Although not relied upon by the United States in its brief, the case of United States v. Moore is somewhat analogous. 477 F. App'x 102 (4th Cir. 2012) (unpublished). In Moore, an unpublished decision from which Chief Judge Gregory dissented, the Fourth Circuit held that the good-faith exception applied where the Defendant possessed "more than one-half kilogram of cocaine," id. at 103, which was "worth an estimated $10,000, on the same block where the residence was located." Id. at 106. A key difference in this case, however, is drug quantity. In Moore, a "normal inference[]" is that a defendant who possessed $10,000 worth of

17

Finally, the United States attempts to argue that, when one considers evidence not included in the affidavit, the good-faith exception is met. Courts may consider "uncontroverted facts known to [law enforcement] but inadvertently not presented to the magistrate." McKenzie-Gude, 671 F.3d at 460. Here, the United States argues that four additional facts, not presented in the affidavit but known to the officers, support probable cause.

First, the United States argues that the Defendant "was stopped coming *from* his residence." Gov. Resp. at 14. The evidence, however, simply does not support this assertion. The officers saw the Defendant driving from Marcus Drive to the intersection of Old Oyster Point Road and Marcus Drive, but they did <u>not</u> observe him coming from his residence. Hr'g Tr. 15:25-16:2.

Second, the United States argues that the Defendant provided misleading information regarding his residence, which supports the inference that evidence of drug trafficking was located at Marcus Drive. The evidence, however, does not support this assertion. The

cocaine on the street block where his house was located possessed additional evidence of drug distribution in his residence. <u>United States v. Anderson</u>, 851 F.2d 727, 729 (4th Cir. 1988). That inference, however, is not fairly applicable to the facts here. Relative to the defendant in <u>Moore</u>, the Defendant here possessed a much smaller quantity of drugs, which the evidence suggests he was distributing to only five (5) individuals. <u>See</u> <u>supra</u> note 3. Relative to the Defendant in <u>Moore</u>, the Defendant here was not on the block of his residence at 948 Marcus Drive, but rather was at the end of Marcus Drive where it intersects with Old Oyster Point Road. Hr'g Tr. 8:24-9:4, 15:22-16:2; <u>see</u> Gov. Ex. 4 (map of area).

Defendant did provide two addresses to law enforcement: one on Fluvanna Drive and one on Marcus Drive. The evidence, however, shows he was in fact between these residences, which is what he told law enforcement. Thus, he never provided incorrect or misleading information to law enforcement. This is not a case, for example, where the Defendant engaged in "suspicious and evasive behavior just outside the home's front door." Grossman, 400 F.3d at 217.

The United States then attempts to argue that the evidence showing the Defendant resided in two locations "created a reasonable inference that he kept two homes for a reason: one where he resided with his girlfriend and one, like the one he had just come from, where he stored more of the same drugs that he had just been stopped with." Gov. Resp. at 14. This argument is not persuasive. Evidence that a person is moving to a new home does not create the inference that they are using their old home for drug activity.

Third, the United States points to the fact that the Defendant initially provided false information about the quantity of drugs he possessed in his car. An attempt to downplay the amount of drugs he possessed in his car, however, does not support an inference that he possessed more drugs at his residence.

Fourth, the United States points to the text message that Officer Torrez observed on the Defendant's second cell phone, which

read, in substance, "approximately eight minutes away from meeting up." Like all of the United States' evidence, however, this text message supports that the Defendant was in the process of distributing the drugs in his car. It does not provide a link to additional drugs or his residence.

One additional consideration dilutes the officers' good-faith reliance on the warrant. Officer Torrez, the affiant, participated in the execution of the warrant. "This undercuts the executing officers' good faith reliance." Lewis, slip. op. at 14 (citing United States v. Barrington, 806 F.2d 529, 532 (5th Cir. 1986)). Officer Torrez was aware of the evidence known to the officers and not presented in the affidavit in support of the warrant. As such, his reliance on the warrant would not be "objectively reasonable." Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 922). Moreover, even if the other evidence had been included in the affidavit, it still would not have supported probable cause.

In sum, even considering the scant other evidence known to law enforcement but not presented in the affidavit, the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Perez, 393 F.3d at 461 (quoting Leon, 468 U.S. at 923). The good-faith exception to the exclusionary rule therefore does not apply to the evidence seized from the Defendant's home.

### III. Conclusion

The stop and search of the Defendant's car was lawful, but the search of the Defendant's residence violated the Fourth Amendment. Accordingly, the Defendant's Motion, ECF No. 16, is **DENIED IN PART** and **GRANTED IN PART.** The evidence seized from the Defendant's residence is **SUPPRESSED.**

The Clerk is **DIRECTED** to forward a copy of this Opinion to counsel for the Defendant and the United States Attorney.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

Rebecca Beach Smith
Senior United States District Judge

March 19, 2020